MONCURB, P.
This is a supersedeas to a judgment of the District Court at Wil-liamsburg, affirming a judgment of the Court of Hustings for the city of Richmond, rendered on a motion on a forthcoming *767 bond given tinder a distress warrant for rent. On the hearing of the motion in the Court of Hustings, the defendants in that court, who are the plaintiffs in error here, offered evidence tending to prove that the plaintiff in that court, who is the defendant in error here, was, before and at the time of the making and delivery of the said bond, indebted to the said defendants; or, which is the same thing, to the National Express and Transportation Company, a body politic and corporate, upon whose goods, chattels and effects the warrant of distress in the condition of the said writing obligatory named was levied, in a sum greater than the penalty of the said bond, to wit, in the sum of $5,000; it having been agreed between the said plaintiff and the said defendants that any such debt might be urged by way of offset to the said bond, if evidence of such debt should be admissible ; and the plaintiff thereupon objecting to the admissibility of the said evidence, the court rejected it, upon the ground that the defence of such offset was inadmissible in a motion upon a forthcoming bond taken under a warrant of distress. To this ruling of the court a bill of exceptions was taken, which presents the only .question we have to decide *in this case. That question, as already' shown, is, Whether an offset, or a set-off, as it is more commonly called, is a good defence to a motion on a forthcoming bond taken under a distress warrant?
A forthcoming bond was for the first time authorized by law to be taken under a distress warrant at the Revision of 1849. So much of the law as is material to this case is contained in the Code, ch. 189, “of forthcoming bonds,” $$ 1, 2, 3, 4 and 5, and is as follows:
1. The sheriff or other officer levying a writ of fieri facias, or distress warrant, may take from the debtor a bond with sufficient surety, payable to the creditor, reciting the service of such writ or warrant, and the amount due thereon, (including his fee for taking the bond, commission and other lawful charges, if any), with condition that the property shall be forthcoming at the day and place of sale. Whereupon such property may be permitted to remain in the possession and at the risk of the debtor.
2. If the condition of such bond be not performed, the officer unless payment be made of the amount due on the execution or warrant, (including his fee, commission and charges as aforesaid), shall, within thirty days after the bond is forfeited, return it, with the exectttion or warrant, to such court, or the clerk’s office of such court, as is prescribed by the 27th section of chapter 49. The clerk shall endorse on the bond the date of its return; and against such of the obligors therein as may be alive when it is forfeited and so returned, it shall have the force of a judgment. But no execution shall issue thereon under this section.
3. The obligors in such forfeited bond shall be liable for the money therein mentioned, with interest thereon from the date of the bond till paid, and the cost; the obligee or his personal representative shall be entitled to recover the same by action or motion.
*4. In an action or motion on such bond, when it is taken under a distress warrant, the defendant may make de-fence on the ground that the distress was for rent not due in whole or in part, or was otherwise illegal.
5. If any such bond be at anyr time quashed, the obligee, besides his remedy against the officer, may have such execution on his judgment, or issue such distress warrant as would have been lawful if such bond had not been taken.
In a note of the Revisors to chap. 148, $ 7, of their report, p. 735, they say, in reference to the abolition of the action of Re-plevin, (which they recommend), and of the remedies which they propose to substitute in its place, as follows: “The act of 1822-3, p. 31, ch. 29, l 3, after reciting that doubts exist whether the action of replevin, as provided for by the common law of England, is not still in force in this State, declared that the action should be construed to exist in no other cases than should arise under and by virtue of the act in 1 R. C., p. 446, ch. 113, concerning rents. If it is to exist in no other cases, we think it better to abolish it altogether, and to attain its objects by other means. In the case of an attachment, the defendant from whom rent or money is claimed, or a third party claiming the property attached, can assert his rights before the court to which the attachment is returnable. In the case of a distress, we have in a subsequent chapter (concerning interpleader and the settlement of the right to property distrained or levied upon), placed a third party claiming property distrained, upon the same footing as if he claimed property taken under execution. The only other case to which the writ of replevin is now '"applicable in Virginia, is that of a tenant illegally distrained upon. We propose that a tenant be permitted to give a forthcoming bond when his goods are distrained for rent, in like manner as a debtor may give such bond when his*goods are taken under execution; and that on a motion on a forthcoming bond taken under a warrant of distress, the tenant be allowed to controvert the legality of the distress. Thus all the purposes for which the writ of replevin is now resorted to in Virginia, will be attained by other remedies with which counsel in this State are more familiar. ” “If the action of replevin were retained, we think it would be better to extend it as a means of retaining specific property, to other cases than those of distress and attachment for rent.” “Seeing, however, that it has been the pleasure of the General Assembly to narrow its range to a few cases, and that in those cases it is a remedy attended with a good deal of inconvenience, we have thought that it would probably suit *768 counsel in this State and the community best to drop it altogether, and to adopt in lieu of it the other remedies mentioned in this note.”
Thus it appears, that the defence which a tenant may make to an action or motion on a forthcoming bond taken under a distress warrant, was intended by the legislature to be a substitute for his common law remedy by the action of replevin, which was abolished by the Code. It seems to be material, therefore, to enquire, in the first place, whether the defence of set-off could be made in that action.
It seems to be well settled in England, that a set-off cannot be pleaded to an avowry for rent. Babington on Set-off, p. 8, 6 Law Library ; 2 Pothier on Obligations by Evans, p. 115; Sapsford v. Fletcher, 4 T. R. 511. In that case Lord Kenyon, Ch. J., said: “It is much to be lamented that it should have been so decided; however, for the sake of certainty in the law, we must submit to those decisions till the Legislature alter the law.”
On the other hand, it was at least as well settled in this State, that a set-off was a good defence to an avowry for rent in an action of replevin; as the cases cited by the “counsel for the plaintiffs in error plainly show. Turberville v. Self, 2 Wash. 71, decided in 1795; same case, 4 Call 580; Nicholson, &c., v. Hancock, &c., 4 Hen. & Mun. 491, decided by Chancellor Taylor in 1809; and Murray, &c., v. Pennington, 3 Gratt. 91. Turberville v. Self was an important case, and was argued by Washington and Marshall on opposite sides. It is imperfectly reported in 2 Wash. ; but is fully reported in 4 Call, from Mr. Marshall’s notes. The latter report was not published until 1833; which accounts for its not having been referred to by Chancellor Taylor in Nicholson, &c., v. Hancock, &c., supra, nor in 1 Rob. Pr., old ed., p. 420.
The language of the English statutes of set-off, 2 & 8 Geo. 2, is different from that of ours. “Where there are mutual debts between the plaintiff and defendant, &c., one debt may be set against the other,” &c., is the language of those statutes; Bab. on Set-off, 2; while that of our act of December 29,1806, which was in force until the Revisal of 1849, was, 1 ‘when any suit shall be commenced and prosecuted, &c., for any debt due by judgment, bond, bill, or otherwise, the defendant- shall have liberty, upon trial thereof, to make all the discount he can against such debt; and upon proof thereof, the same shall be allowed in court.” 1 R. C. 1819, p. 487. The language of the law, as it stands in our Codes of 1849 and 1860, is substantially the same, or, at least, has the same meaning : ‘ ‘In a suit for any debt, the defendant may, at the trial, prove, and have allowed against such debt, any payment or set-off which is ; so described in his plea, or in an account■ filed therewith, as to give the plaintiff notice of its nature, but not otherwise.” Code, ch. 172, l 4.
The difference between the language of the statute of set-off in other States and that of ours may perhaps sufficiently account for the apparent conflict of some of the judicial decisions of those other States with our decisions before “'referred to. In this way, the ' cases cited by the counsel for the defendant in error, of McMahon v. Tyson, 23 Geo. R. 43; Sketoe v. Ellis, 14 Ill. R. 75; and Rae v. Halbert, &c., 17 Ib. 572; may be explained. Eor example: the statute of set-off in Illinois provides, that a defendant “in any action brought upon any contract or agreement, either express or implied, having claims or demands against the plaintiff, may set up the same, and have them allowed him upon the trial.” In the case last cited, it was held that a judgment is not a contract within the meaning of this statute; the court being of opinion that the words “action,” “contract,” and “agreement,” in the statute, were used in their ordinary sense, and not with the intention of embracing every imaginable litigation, upon every cause of action. Id. 580. Now it happens that in our act of 1806, “debt due by judgment” is expressly enumerated as one of the causes of action to which the right of set-off applies; and in the Code the words are, “In a suit for any debt,” which, of course, embraces a debt due by judgment.
The reason on which the English decisions, that a set-off is not a good defence to an avowry for rent in an action of reple-vin, were founded is, “that the statutes make mention only of mutual debts; therefore the demand, as well of the plaintiff as of the defendant, must be a debt; and a set-off is not allowed in actions for torts, as upon the case, trespass, replevin, or de-tinue.” Bab. on Set-off, p. 8. In other words, the action of replevin was regarded in this respect as an action ex delicto, as it certainly is in form, and so not within the terms of the statutes. Our courts, on the other hand, regarded the action, after the defendant’s avowry for rent, as, in substance, an action ex contractu, by the defendant against the plaintiff, for the rent; and as therefore coming within the true intent and meaning, if not the literal terms also, of the act. Lord “Kenyon, as we have seen, regretted that the English courts had not placed the same construction on their statutes. There is another very material respect in which the construction of the English statutes and ours has been different; and that is, that in England it has been held that the set-offs relied on as a defence, must have been due to the defendant at the commencement of the action ; Id. p. 9; while with us, “discounts are allowed up to the time of the trial; but not so as to destroy the plaintiff’s action and entitle the defendant to costs. If, therefore, after suit brought, the defendant buys bonds due by the plaintiff, though he ma3r discount them on the trial, there will be a judgment for costs against him.” 2 Tuck. Com., book 3, p. *769 108, and cases cited. This course of decision in this State shows, that the statute of set-off has been liberally construed, 'with a view to the furtherance of its obvious policy, which is to prevent multiplicity of suits, and, as far as conveniently can be done, to effectuate in one action complete justice between the parties.
Before the revision of 1849, our statute provided that “the plaintiff in replevin, and the defendant in all other actions, may plead as many several matters, whether of law, or of fact, as he shall think necessary for his defence. 1 R. C. 1819, p. 510, § 88. Thus showing- that the legislature regarded the action of replevin, though commencing as an action ex delicto, in form, as becoming, in effect, after the avowry, an action ex contractu, brought by the defendant against the plaintiff for the recovery of the rent claimed in the avowry. "When the action of replevin was afterwards abolished by the Code of 1849, the language of the above provision was changed to suit the case, and made to read thus : ‘ ‘The defendant in any action may plead as many several matters, whether of law or fact, as he shall think necessary. ” Code, ch. 171, $ 23.
Such was the nature of the action of replevin, and such *the rights of the plaintiff therein, according to the decisions of our courts, when it was abolished by the Legislature at the revision of 1849, and another remedy substituted in its place, which was professedly intended to be, not only a simpler and easier remedy than the old one, but at least as beneficial, especially to the tenant. It was to attain, said the revisors, by means more familiar to counsel in this State, “all the purposes for which the writ of replevin” was then resorted to in Virginia. Now the writ of replevin was then resorted to for two principal objects; first, to retain possession of the goods distrained for rent until it could be judicially ascertained whether any rent was due, and if so, how much ; and secondly, to afford an opportunity of making all the defences which the tenant was entitled to make against the landlord’s demand for rent; one of which defences, as we have seen, was, to set-off against that demand any debt due by the landlord to the tenant. The tenant had had no day in court, and the object of the writ was to give him a day in court, and enable him, in the meantime, to retain possession of his property distrained by his landlord.
Let us now look again at the remedy provided by the Legislature, on the recommendation of the revisors, in lieu of the writ of replevin. It is by giving a forthcoming bond, on which a judgment can be obtained only “by action 6r motion.” By giving this bond, the tenant certainly attains the first object which was formerly attained by the writ of replevin: that is, he acquires the right to retain possession of the property distrained; and he also attains the other object formerly attained by that writ: that is, he acquires the right of making, in the action or motion on the bond, all the defences which he could formerly have made in the action of replevin, including the defence of set-off. That he acquires the right to make that defence would seem to me to result from the terms of the new law *without reference to what was said by the revisors, and even without reference to the decisions of our courts before referred to, in regard to the action of replevin. There was a difficulty in applying the defence of set-off to that action as being in form an action ex delicto, which difficulty does not exist in regard to an “action or motion” on the forthcoming bond; and even according to the doctrine of the English courts, I cannot see why “set-off” would not be a good defence to such an action or motion. But certainly I think it is, when we also take into view the decisions of our courts and recommendation of the revisors aforesaid. Such would be my construction of the Code, chapter 189, if it had not contained the fourth section. And I do not think that section restricts, if it does not enlarge, the tenant’s right of defence. The words of that section, as before stated, are: “In an action or motion on such bond, when it is taken under a distress warrant, the defendants may make defence on the ground that the distress was for rent not due in whole or in part, or was otherwise illegal.” It was properly conceded in the argument, that that section was not intended to embrace all the defences which may be made to such an action or motion; but that other defences, such as “non est factum,” “conditions performed,” &c., may still be made. Why then, also, may not the defence of set-off, supposing it not to be embraced in the terms of the fourth section above mentioned, still be made? It was argued, that common law defences not embraced in those terms still may be made, but not statutory defences; and that the fourth section was intended to give the only statutory defences which could be made in such a case. But why so? There is nothing exclusive in the language of the fourth section. It affirmatively declares that certain defences may be made, and not that certain other defences may not, or no other defence may, be made. Why, then, *may not the de-fence of set-off, given by the Code, cb. 172, § 4, be made in the case? The case comes within the literal terms of that section, and also within its spirit and policy. It was well settled that set-off was a good defence in the action of replevin, and the new remedy adopted by the Code in lieu of that action, was recommended by the re-visors because, while it was a simpler remedy than that action, it at the same time would be as effectual, in all respects, as was that action. It seems, therefore, to follow, as matter of necessity, that the right to make this defence must be found either in the fourth section of chapter 189, before mentioned, or somewhere else in the Code. If it be not in the said fourth section of chapter 189, concerning “forthcoming bonds, ’ ’ I find it in the fourth section *770 of chapter 172, concerning “payment and set-off,” before referred to. If it could be found no where else in ' the Code than in the fourth section of chapter 189, then I would find it there; and I think the words of that section are sufficiently broad to embrace it, if it be necessary to do so in order to effectuate the manifest intention of the Legislature. That such was the manifest intention of the Legislature is,1 I .think, beyond all controversy. It is almost impossible to suppose that the Legislature intended to take away from a tenant this well-settled right of defence which he had, and to compel him to pay the full amount of his rent to his landlord, though the latter might be indebted to. him in a larger amount. The tendency of legislation has been altogether the other way. If the Legislature had intended to take away this well-settled right, they would have done so plainly, and not by mere implication. Instead of that, they have used language in perfect consistence with the continuance of the right, and which was recommended by the revisors as effectual to secure all the benefits which could have been derived from the action of replevin, including, of course, the right *of set-off. Then I say again, that if it were necessary to effectuate this manifest intention of the Legislature, I would find the right to make the defence of set-off in the fourth section of chapter 189: “In an action or motion on such bond, &c., the defendants may make defence on the ground that the distress was for rent not due in whole or in part, or was otherwise illegal.” May it not well be said, that the rent is not due in whole or in part when the landlord owes to the tenant a debt exceeding or falling short of the amount of the rent, and such a debt as would, beyond all question, be a good set-off against the rent in an action therefor? It is argued that these words, “for rent not due in whole or in part,” apply to “payments,” but not to “set-offs;” and that a set-off is not a payment. Strictly speaking, this may be so. Undoubtedly there is a difference in our law between a payment and a set-off; differing in this respect from the civil law which made a set-off a payment eo instanti that it became a set-off. “It is evidently a principle of natural reason and justice,” says Lvans in his Appendix No. 13 to Pothier on Obligations, 2 vol., p. 112, “that when two parties are mutually indebted, the balance only shall be paid, and that one of the parties shall not be compelled to pay the debt which he has incurred, and be left to sue for that to which he is entitled. This principle forms an essential part of the civil law, and the effect of such mutual debts in destroying each other is distinguished by the term compensation; the extinction or reduction of one debt ensues immediately and by operation of law upon the other being contracted, as is shown by the chapter to which this appendix refers.” Our law gives to the defendant an election to make his counter claim a set-off against that of the plaintiff, or bring his separate action for it. When he elects to make it a set-off, he gives to it, in most respects, the effect of a payment, and it just as effectually .bars and extinguishes *the plaintiff’s demand as would a payment of the same amount. Of course he cannot, by pleading set-off, take away the jurisdiction of the court in which the suit is brought, as he might by pleading and proving payment, because non constat, when the plaintiff brought his suit, that the defendant would elect to plead his set-off. Our statute treats of payment and set-off together, and places them upon the same ground in prescribing the mode of relying upon them as matters of defence. “In a suit for any debf, the defendant may at the trial prove, and have allowed against such debt, any payment or set-off which is so described in his plea, or in any account filed therewith, as to give the plaintiff notice of its nature, but not otherwise.” Code of 1860, p. 716, ? 4; and to the same effect is 1 R. C. 1819, p. 510, l 87.
But it is argued that there is something in the nature of a forthcoming bond which is incompatible with the right to make such a defence as that of set-off; that the law declares, that when the bond is forfeited and returned as therein mentioned, it shall have the force of a judgment; and that no defence can be made to a motion on the bond which cannot be made to a scire facias on the judgment, except where the statute otherwise plainly authorizes. Whatever may be the force of this argument, I think I have shown that the statute does plainly authorize this defence, and therefore it may be made according to the concession of the argument. But I think too much effect is given in the argument to the words, “shall have the force of a judgment.” Sven in regard to a forthcoming bond taken under an execution, it had the force and effect of a judgment only sub modo, even under the old law which existed before the Code took effect. In Lipscomb’s adm’r v. Davis’s adm’r, 4 Leigh 326, it was held that the statute of limitations, 1 Rev. Co. ch. 128, § 5, whereby the remedy on a judgment by debt or scire facias is limited *to ten years, is no bar to a motion on a forthcoming bond of more than ten years’ standing. Tucker, P., in his opinion in that case, in which the other judges concurred, said: “Admitting, however, that the bond has, to some intents, the force of a judgment as soon as it is filed, I think it obvious that it has not all the effect of a judgment, until there has been an award of execution. No execution can be sued on it, at the mere will of the party; the authority of the court must first be obtained by motion.” “Moreover, it cannot be obtained by scire facias, but the motion and the action of debt are the only remedies. Then, again, though the statute gives to the bond the force of a judgment, still it looks upon it, until execution has been awarded, in a far different light.” The Judge then proceeds to show in what respects the bond *771 differs from a judgment, and the effect of such difference; and concludes his opinion thus: ‘‘Upon the whole, I am well satisfied that this provision of the statute of limitations does not apply to a forthcoming bond before the award of execution. But when upon motion, execution is awarded, it acquires all the characteristics of a judgment, and from that moment is within the statute. The party can never after elect to consider it as a common law bond; he has fixed its character as a judgment; he can now take out execution at his pleasure. If he fails to do so within the year, he is driven to his scire facias; and if his failure continues for ten years, he is barred forever.” How this decision was made under the old law, contained in 1 K. C. 1819, p. S30, $ 16, as amended by the act of February 23, 1822, Sup. E. C. 270, which authorized, first the clerk, and then the court, to award execution on the bond; whereas, by the Code, ch. 189, § 2, which gives to the bond the force of a judgment, it is expressly declared that “no execution shall issue thereon under this section;” but by the next section, 3, it is declared that “the obligee, or *his personal representative, shall be entitled to recover” the money mentioned in the bond, with interest and costs, “by action or motion.”
But whatever may be the defences which may be made to a motion on a forthcoming bond taken under an execution, the question is very different in regard to defences which may be made to a motion on a forthcoming bond taken under a distress warrant. The Legislature found it convenient to adopt the forthcoming bond as the means of affording a substitute for the action of replevin; but they did not intend thereby to adopt, in regard to such a bond, all the consequences which flowed from a forthcoming bond taken under a u execution; or rather, they did not intend to place the two bonds on the same footing in all respects. The radical difference between the two cases consists in this: that when a forthcoming bond is taken under an execution, it is a part of the process of the execution of the judgment, and partakes of all the finality which belongs to the judgment. When the bond falls, the execution on which it was taken falls with it, and the judgment stands in full force, subject to the right of the plaintiff to sue out a new execution thereon. The plaintiff having obtained his judgment, the defendant can not obstruct its execution by making defences which he might have made, but neglected to make, before the judgment which concludes him was obtained. But in the case of a forthcoming bond, taken under a distress warrant, there has been no judgment. The tenant has had no day in court; and when the bond is quashed, the landlord falls back upon no judgment, but upon his mere claim for rent, for which he may sue or distrain, as before. This is a palpcible distinction between the two cases, and to that distinction we must look in determining upon the rights of defence which may be made to an action or motion on the bond in either case. There is no magic in "the -words, “forthcoming bond,” which can take away or prevent the defence of set-off in this case. They well enough define- the meaning and object of the instrument to which they are applied, but we must take care not to be misled by them. The difficulty arises from the use which has been made of them in regard to executions on judgments, and the force of a judgment which has always been given to them by law when forfeited and returned, because they then stand in the place of the judgments in satisfaction of which they were taken. And the present law continues to saj' in regard to all forthcoming bonds, whether taken under an execution or under a distress warrant, that when forfeited and returned as therein mentioned, “they shall have the force of a judgment.” We have seen in what a limited sense these words were used, even in regard to a bond taken on an execution under the former law; and they must have been used in a still more limited sense in the present law, especially in regard to a bond taken under a distress warrant. They were no doubt used in the latter case to give to the landlord the additional security (for the amount of rent due him) of the lien of a judgment on the real estate of the obligors; but certainly not to take away from the tenant a just defence, to which he was before entitled, against the claim of the landlord. These views afford a sufficient answer to the cases of the Bank of the United States v. Patton, &c., 5 How. Miss. R. 200; and Kelly v. Lank, &c., 7 B. Mon. R. 220, cited by the learned counsel for the defendant in error. Those cases arose under the forthcoming bond law' of Mississippi, w'hich is similar to our former law on the subject.
For the foregoing reasons, I am opinion that “set-off” is an admissible defence in a motion upon a forthcoming bond taken under a warrant of distress; that the Hustings Court erred in excluding the evidence offered in that court tending to prove such a set-off as is mentioned in the 'Kbill of exceptions; that the judgment of the said Hustings Court, and also the judgment of the said District Court affirming it, are both erroneous; that the said judgments be reversed, with costs; and that the cause be remanded to the said Hustings Court for a new' trial to be had therein, according to the principles above declared.
The other judges concurred in the opinion of Moncure, P.
The judgment of the court is as follows:
The court is of opinion, for rea sons stated in writing and filed with the record, that the defence of set-off is admissible in a motion upon a forthcoming bond taken under a warrant of distress; that the said Hustings Court erred in excluding the evidence offered in that court tending to prove such a set-off as is mentioned in the bill of exceptions ; and that the said judgment of *772 the said Hustings Court, and also the said judgment of the said District Court affirming it, are both erroneous. Therefore it is considered, that both of the said judgments be reversed and annulled, and that the plaintiffs recover against the defendant their costs by them expended in the prosecution of 'their writs of supersedeas in this court and the said District Court respectively. And it is ordered, that this cause be remanded to the said Hustings Court for a new trial to be had therein of the motion on the said forthcoming bond; on which new trial the defence aforesaid, if again offered to be made, and the evidence aforesaid, if again offered to be introduced, are to be admitted. Which is ordered to be certified to the said District Court, and by the clerk thereof to the said Hustings Court. . • i , :